Call the first case. Case number 07-6231, Siegel v. Hermes-Gabriel. For the defense, about the podium, this is being digitally recorded. Yes, Your Honor. Thank you. Good morning. For the record, my name is Kristen Frost, and along with William P. Murphy, we represent the appellant Hermes-Gabriel. Good morning, Your Honor. Good morning. Thank you. For the record, I'm Assistant State's Attorney Robert Foss, and with me is Assistant State's Attorney Eve Riley for the people of Illinois. We give each side roughly 15 minutes, but we don't look at our watches. So as long as it's interesting and moving along, we're glad to hear your argument. I can assure you that we've read the briefs, in this case the supplemental briefs, the supplemental record, or rather cases filed yesterday by the defense, and we'll consider all of those. So get to your strongest points first, both sides. That's what we'd like to hear. And anytime you're ready, Mr. Frost or Mr. Murphy. Ms. Frost, this side. Thank you, Your Honors. Good morning again. My name is Kristen Frost, and I represent Hermes-Gabriel on appeal. This case is about an innocent man who was wrongly convicted. It was about a miscarriage of justice that started before this trial ever commenced, continued during the trial, and came to a climax during post-trial hearings. I'd like, for that reason, in pointing out the miscarriage of justice that occurred, I'd like to start in addressing the first issue as the trial court's incorrect recall of the facts and evidence as presented at trial. I will then move on to the trial court's erroneous denial of post-trial relief in this case, and then address sufficiency of the evidence and ineffective assistance. In that order, if I have time, I understand that my time is limited today. The first and most salient example of the miscarriage of justice that occurred in this case starts with the record of the trial court's ruling. Judge Lynn found Hermes-Gabriel guilty of aggravated battery. And in making that ruling, and this was in a situation, as the court knows, there were two defendants, Arnold Castillo and Hermes-Gabriel. The case was never severed. Arnold Castillo chose a jury trial, whereas Hermes-Gabriel chose a bench trial. The bench trial, unfortunately for Mr. Gabriel, was parsed out over seven months. It started in October of 2005, concludes around December of 2005. The judge then finds Mr. Gabriel guilty in January of 2006. So we have a several-month period in which evidence is being heard by the trial court in this case. Whether that's the reason the trial court incorrectly recalled the evidence, whether it was because that day the judge was having a bad day, as it happens, for whatever reason, the reason is actually inconsequential because the record demonstrates that the trial court did not recall the evidence, number one. Number two, the trial court never took the opportunity to modify its erroneous ruling when it had more than one opportunity to do so. Looking at the actual ruling, the trial court states he, meaning my client Hermes-Gabriel, was identified by two people in this case as the person that was in the gangway with the gun. That is the first absolute incorrect statement. And it's uncontested by the state's attorney's office at this point, based on their briefs, this was a single eyewitness identification case. Well, it's a single identification in the gangway, and there's two or three witnesses who saw him flashing his gun in his belt several blocks away when they had the first altercation, right? And that's a very good point, Your Honor, but the scene of the crime is the gangway. Ten to 15 minutes prior, there was an altercation, allegedly, at the stop sign intersection of Roosevelt and Fairfield. So there was something that occurred. So it's not just, you know, it just makes sense that something occurred on the street earlier because when the real guy, as you would put it, the co-defendant who did this crime, comes forward, he shoots him. He says, the defense in this case was, yes, this happened, that there was a problem at the corner, and the bad guy, the co-defendant, then followed him in a car with another guy and shot him and killed him in this gangway. So it's, right? So would you like me to address? No, no, go ahead. No, I'm just saying. So it's not a single finger. There's a single finger in the gangway. There's two fingers minutes earlier down the street where this started. Actually, the alleged two fingers that occurred at the stop sign, my client isn't charged with any kind of criminal conduct that occurs at a stop sign. Right. Okay? And as the court knows, this wasn't charged as a continuing crime. No factual event that occurs at the stop sign is charged within the four corners of the charging documents in this case. I argued in the briefs that that testimony actually was irrelevant, and trial counsel should have moved to eliminate that as proof of other crimes. It didn't happen, so that evidence comes in. And Your Honor makes a very interesting point, but the identification of Arnold Castillo and the man identified as Hermes Gabriel at the stop sign wasn't positive either. In fact, Candido Marino, who's one of the victims, testifies in court, I think that the other man by the stop sign might have had a gun. He might have pulled his shirt up and he might have had a gun. I'm not sure. That was his testimony. Then, Lewis, Can you move on to the next point? You're going to be here forever arguing. This was a bench trial in front of Jim Lynn, who's a well-known trial guy. Yes. It was tried. The defense attorney was Richard Boyke. Would that be right as well? Yes, Your Honor. Another well-known trial guy. And so they tried this in front of, he tried this case, an ID case in front of a judge. That's what he did. And I'd suggest from having done it for many years, that's what you want to do. You don't want a jury to decide an ID case because they don't understand it. They think that witnesses are never wrong. And judges know they're often wrong. Thank you, Your Honor. The judge in this case didn't. And the judge in this case made a mistake. The second erroneous point in his ruling, looking exactly at the words of the ruling, is that Hermes was identified in the gangway by one witness of shooting the gun. That also goes against all evidence that was admitted at trial. Hermes Gabriel was never identified as someone shooting a gun. Hermes, as we know, was only identified by Juan as allegedly being a second person in the background, in the shadows, holding a gun. He was never identified as shooting a gun. So that is another mistake, and that is another demonstration that the trial court incorrectly recalled the evidence as presented. Again, at the end of the ruling, the trial court states that Mr. Gabriel was identified by one of the brothers and by Candido Marino. Again, that happens at the stop sign, and Candido Marino didn't positively identify Hermes Gabriel as being there. The scene of the crime was in the alley. It was in the gangway. It's where the shooting occurred. And the trial court did not, didn't recall the evidence properly. On that note, the trial court had the opportunity to correct itself. The trial court stated on the record that it had, that he, the judge, had reviewed the transcripts in this case before he denied the motion for new trial, after the trial had concluded. There is no way, looking at the transcripts and the testimony that was presented during this bench trial, that the trial court could have actually looked at the transcripts and not corrected its ruling. The trial court should have reversed itself, should have taken the opportunity to modify and correct its ruling, and it didn't. Under the law, and under People v. Bowie, which is cited in the briefs in this case, a trial judge cannot go on an independent fishing expedition or cannot go outside of the record. And the record doesn't support the ruling in this case. My second point is that the trial court's denial of post-trial relief was erroneous, based on the new evidence presented after trial. Now, typically, denial of post-trial relief does get a standard of abuse of discretion by this court. Here, I would argue for a de novo review, and in doing so, I cited to People v. Leach, which is a 2009 decision by Justice Tumen, where the court held that questions of law, even questions that typically get abuse of discretion, sometimes will get a de novo review when the court deems it necessary. The denial of the post-trial relief in this case warrants de novo review, because A, substantively, the judge did not apply the correct legal standard of when to grant a new trial based on new evidence, and second, because procedurally, Hermes Gabriel wasn't afforded a full and fair hearing based on new evidence. What was lacking? What did the judge refuse to allow Mr. Gabriel to do in post-trial? You mean on my second point, the procedural? He just said he was denied a fair post-trial hearing. He's deprived of it now. So how is he deprived of it? What did the judge do? He was deprived of that. Arno Kassio, as the court knows, provides the court with an affidavit and provides the court He testifies, right? The judge does this. The judge and the state's attorney on the case engage in this dialogue that is, again, it's documented in the record, where the judge asks the state's attorney, how does Mr. Gabriel's picture get into the photo array? The state's attorney's response was, well, judge, I believe that the police just compiled a bunch of pictures of known gang members in the area. This was completely improper dialogue. First of all, the judge is asking about information and evidence that wasn't presented at trial, and that's improper. The judge, again, is married, has to make his ruling or his findings based on evidence. This comment by the state's attorney is talking about gang members. It's taking Hermes Gabriel's name and associating gang members. It's evidence that wouldn't have come in. The co-defendant supplies his affidavit and his testimony. It was that he's close enough to the co-defendant, Hermes, that Hermes told him, I won't be on the street corner today gang-banging with you because I'm tied up with my in-laws from Australia. So you have the alibi. But the co-defendant testifies, I was aware of his alibi before he did the alibi. So doesn't that tie them very closely at the hip in terms of knowing each other? And again, not with a criminal enterprise necessarily, but being very close pals. Close enough where the co-defendant, your client, called this other co-defendant, the shooter, said, I won't be out there with you on that corner. I won't see you tonight because I'm home. Well, that's an inference that we're looking at. But it's not an inference. He testified to that. Your witness, the shooter, said, we're so close, he called me and told me he was not going to be around because his family was in from Australia. That was presented by your client. My recollection of the record is that he didn't say we're so close. He said, yeah, they talked on the phone the day this happened. However, also, this wasn't a situation where co-defendant Castillo was a flipper. This wasn't a situation where he gets originally interviewed by the State's Attorney's Office and finger points to my client, says he did it, and then changes his mind after the trial is over and exonerates our client. He never implicated Hermes Gabriel in the first place. Or anybody else. He didn't give a statement that it was TK or whatever. But he did also, in this post-trial hearing, not only say it was Carlos Killian that was with me on September 14th of 2004, he also named two additional people. He gave the names of those people, and one of those people was apparently deceased at the time of this hearing. So he not only IDs Carlos Killian, but two other specific individuals. He talks about fleeing in a gold car, and he completely exonerates my client. That is new evidence under the case law. And particularly, as the Court noted, we did file a motion to supplement the cases we referred to, and I would point to the new case from November 19th, the Justice Burke decision in the Ortiz case. Admittedly, that's about a post-conviction proceeding, and it's about when the cause and prejudice test under the statute, when there can be an exception for new evidence. But the Court's rationale in that case and the way they come to their holding demonstrates that new evidence cannot be taken lightly by a trial court or otherwise, whether it's in a post-conviction proceeding or whether it's in a post-trial posture. Well, again, the Ortiz, I should say, was a successive post-conviction matter, and the Supreme Court was unhappy with what the trial court did. Ortiz was convicted by a jury several years before the real guy came through with his testimony. In this case, it's a matter of weeks, is it not? So you have the trial. Again, it's a separate trial, the jury deciding the shooter's case and Judge Lynn trying this man's case. And after the jury comes back with a guilty on the shooter, he goes on to IDOC. The post-trial motions are still pending on this defendant's case, and they bring back the shooter who now testifies. Essentially, now Gabriel's already convicted of it, but he then testifies while still pending in front of Judge Lynn. It's a matter of weeks in front of him. He didn't do it. I did it with this other guy. So I suggest it's not a five-year gap. It's not a jury. This is the same guy. Judge Lynn is the one who heard this trial. He's the one who would waive the testimony in the motion for new trial from the shooter. And so while it's absolutely new evidence, as you say, and you cite most staff for the idea, counter to the state's argument that it's not new evidence, it is absolutely new evidence. There's no way that Gabriel could have called the shooter. You can't do that. So it's absolutely new evidence. But then it's heard by the same trier of fact. So Judge Lynn hears this, looks at the shooter, hears the testimony, considers the direct across, says, I don't believe it. That's still a very high mountain to get over. And I suggest it's not a legal question. This is what judges do. This is what a trial court's for. Okay. May I respond, Your Honor? Sure. First of all, as far as the chronology that the court has cited to, I would respectfully disagree in the sense that the bench trial and the jury commenced in October of 2005. My client is found guilty in January of 2006. Post-trial motions, a regular standard motion for new trial is filed. And that is denied on April 26th of 2006. Then in July of 2006 is when Mr. Castillo submits his affidavit exonerating my client, Mr. Gabriel. And then they have a hearing and that's denied on March 22nd of 2007. So we are actually talking about a trial that starts at the end of 2005 and a post-trial hearing that is in 2007. It's not two full years, but it's certainly not just a few weeks that lapse. And as far as I understand that the court is agreeing with me that Arnold Castillo's testimony constitutes new evidence under Illinois law, the standard is that if those four prongs are met under Ortiz or the Molstad case, which is another case that I supplemented my briefs with, the trial court must grant a new trial. That is the standard of law. Not just because a trial court is given so much deference that it can deny without a finding of fact or ruling of law. The trial court merely said, motion denied. I looked at the transcripts. He didn't make, the judge didn't make a finding on the record saying, I think Mr. Castillo is incredible for these reasons. He didn't make any conclusions of law. He didn't apply the law to the facts. He merely said, without a basis, denied. So looking at that, I don't think that a trial court can be given deference in this situation. And again, the test is if there is new evidence, if it is material, if it is not cumulative, and if due diligence could not have made it discovered earlier in time, that that defendant gets a new trial. Counsel, is there any distinction in the cases between when it's a jury verdict versus when it's the judge who's tried the case and seen the facts for himself, seen the evidence? As far as granting a new trial? As to, you said he didn't say enough. All he said was denied. This isn't a jury verdict. This is when the judge himself has heard the evidence. Does he need to spell it all out again? I just want your response to that. Sure, Your Honor. Well, first of all, a jury wouldn't be deciding post-trial issues. No, they wouldn't. He would be deciding post-trial issues, but it would be based on a jury verdict. So you have a difference here, where the judge is saying, I saw it all. You're bringing it to me again. Denied? I think that the judge has a duty to make a finding as to why he's denying it. And is there any difference in the deference you mean a trial court would give to a jury verdict as opposed to his own finding? Not the difference, just the fact that he has personal knowledge. He decided the case. He was the trier of that. Is there, I'm asking, is there a distinction in the cases between when the judge, when you say how much he has to set out? How specific does a judge need to be? Isn't there a little more leeway in the judge not being quite as specific as saying, I reviewed the record of the evidence. This is what the jury heard and spelling out his reasoning for denying, as opposed to, I just heard this case. We're all the same players here. It's denied. Is there a difference? No. And there shouldn't be. And fairness requires that even if the judge is the finder of fact, as opposed to the jury, that this should be the same. And if anything, it should be more solidified when it is the court that plays the dual role as the fact finder and as the person that applies the legal standards. Because judges, just like juries, make mistakes. I mean, I don't think that's a question. And that is the difference to a bench trial. That's what they do. They try things, judges. Especially a guy like Lynn who's down there every day. They try things. And unlike jurors who hear one trial in their life, a judge would have heard many hundreds of cases. I happen to be a strong believer in that. The gold standard for truth finding is a judge and not 12 jurors, before I say something. But I think most judges agree with me for what that's worth. And naturally, Your Honor, if it were a perfect world, that would be a... I'd be out of a job. It would be a good way to view the way evidence comes in at a trial. But, you know... There's no evidentiary arguments here, right? Just at the end of the result. So it's not like the judge made trial errors. Everything was put in. Everybody in the pool. There's no claims of evidentiary error. It's just at the end of the day, Judge Lynn said, this is what I have. And at the end of the post-trial motion, denied. That's what we're fighting. That's what the issue is. Was he correct in doing so? Thank you, Your Honor. And that's, in my opinion, not good enough. And that doesn't preserve Mr. Gabriel's rights as someone charged with a crime who was found guilty based on evidence that wasn't in the record. And I believe that there is case law from this very appellate district that would contradict the idea that we should just give trial courts deference and assume that they did the right thing because they're lawyers and they're a judge. I would cite to the People v. Hernandez case, which is a First District 2000 opinion, actually out of this very division. It's a Third Division case. I think I wrote it. Did I? I was on it. There was a shooting that involved a witness who was a bus driver who observed the profile of one of the perpetrators for about. Yeah, I wrote it. Okay. Well, then I would point, Your Honor, to his very own words on that point and say, quote, but this deference, and this is in the context of identification testimony on appeal, this deference does not require a mindless rubber stamp on every bench trial guilty verdict we address. So, Your Honor, I very much embrace your words in that case because that encapsulates the fact that we cannot rubber stamp every bench trial guilty and we cannot give deference and just affirm convictions based on assumptions. That is not the way our justice system is supposed to work. Well, and I hope I didn't read it to you. Although I can understand from your point of view, you might think I said that just a few minutes ago. I thought Hernandez was being cited for the idea of ineffective assistance of counsel in that Mr. Hernandez gave a videotaped statement. The first, his third statement is, I don't want to talk to you. And they went over and he then confessed. No, I don't want to speak to you. And I said, no, somebody has to pay attention. When the guy says, I don't want to speak to you, that ends it. And no trial court, the trial judge didn't catch it. The trial attorney didn't catch it. But a trial, an appellate lawyer did catch it. And so we reversed based on that ineffectiveness of trial counsel for not catching the fact that his own client in his statement said, I don't want to talk to you. I mean, it was on tape and they still went ahead. What was that? Well, yes, I did actually. It was cited twice in the briefs and it was cited for ineffective in the context of failing to file pre-trial motions and whether that's trial strategy versus deficient performance. But I think, well, I know that I also cited it under the other sections in the brief. And that quote is powerful to me. So is the quote, another quote from People v. Hernandez. Eyewitness testimony under the best of conditions is subject to all the frailties of human perception. And that quote would actually move me into the sufficiency of the evidence argument, which is my next point. Hermes Gabriel, putting aside for one moment, which this should never be put in front of me, put aside the new evidence issue because it is so important and crucial. But looking at the trial for what it was, he wasn't proven guilty beyond a reasonable doubt based on the vague, speculative, doubtful, impeached and incredible testimony of Mr. Juan Villalobos. And I know I'm mispronouncing his name. Pardon me. French, not Spanish. So he wasn't proven guilty beyond a reasonable doubt based on that testimony alone. And certainly wasn't proven guilty based on an accountability theory beyond a reasonable doubt. The law in Illinois is that, admittedly, over and over again, a single eyewitness identification can be sufficient to convict someone. However, that is not an unqualified rule. The appellate court, the Supreme Court, has said many times and has said this because eyewitness testimony can be so subject to mistakes. They have made this rule qualified on the fact such as the witness had to have ample opportunity to observe the subject of the identification. The witness must be positive, sure and credible. The witness's testimony cannot be doubtful, vague or uncertain. And I would submit to this court that Luis's, or I'm sorry, excuse me, Juan's testimony was certainly doubtful, certainly vague. He was impeached more than once during trial. He never initially provided a description to the police about the alleged second person that he perceives on September 14th of 2004. His testimony was not corroborated by anything. He was identifying strangers, which is certainly problematic and has been recognized by the U.S. Supreme Court and every other court down from there. That stranger identification is particularly questionable. As the court knows, the Neal v. Biggers, or slim factors I will call them, those are the factors that will be applied to identification testimony to see if it withstands muster. And when I say muster, I mean beyond reasonable doubt. The U.S. Supreme Court has defined beyond reasonable doubt and in rewinship as utmost certainty. Could someone be utmost certain that Hermes Gabriel is the second man based on Juan's testimony? No. But again, actually I spoke earlier when I said two people identified him at the street corner a few blocks over. All three of them identified as the person a few blocks earlier. And the case here on the defense side was it's alibi. So either, when it happens, that's just a trier effect as a decision to make. Is he going to agree with the defense that he wasn't there at all? Or is he going to agree with the state that he's at both places? And that's a stark contrast, but that's his choice. And so in this case, based on the alibi now, either the defense is not there at all and he's an innocent man, which is the argument today, and was at trial, or the state is right that he was at both places. Because certainly the person who was at the street corner showing the gun was with the shooter when he shot the person he shot. He's at both or neither. And the judge heard the evidence and said, well, he's at both. So again, it's three people at one corner and then one person later. And then later, as pointed out in the state brief, when the shooter testifies, the shooter says the person who was with me, now he says it's CK, was there as my backup to protect my back, which then brings in the idea. So he's saying the person who accompanied me, not Mr. Gabriel, but my CK, he's there for a purpose to make sure I don't get attacked from behind and the cops don't come. All the normal lookout stuff you would have. So he said there's a lookout. He said there's an accountable guy, just not this guy. And Your Honor brings up a great point, which is consistently repeated in case law in Illinois, again, both here at the appellate level and up in the Supreme Court, where there is a conflict between an alibi and eyewitness identification. I would submit to the court that in the cases, a few which are cited by the state in their brief, such as Rincon or Wardle, those are cases where either the witness, the identifying witness, knew the defendant, so it wasn't stranger identification, or the slim factors were, as applied to the facts in that case, were so strong that the eyewitness identification was powerful enough to overshadow the alibi. And there would have been other problems with alibi in that case. And I can't stress enough that Wardle, for instance, that was a sex assault case, where the victim saw the perpetrator face-to-face. The Rincon case wasn't an accountability case. It was where the witness knew the defendant for several months before he identified him. So whether an alibi takes precedence or is more persuasive than eyewitness identification, it depends on the facts and evidence. And in this case, it wasn't. Rincon also says, I'm quoting, the trial court is not obligated to believe a defendant's alibi witnesses over the state's witnesses, especially when the defendant's witnesses are related to the defendant and failed to come forward during the initial investigation. So I don't know if they came forward. They were actually crossed on this. The eyewitnesses here, they don't provide initial descriptions of either man number one or two at the stop sign or man number one or two in the gangway. In fact, I take that back, Lewis, who's one of the victims in the hospital, gives some kind of general description about someone he thinks he saw with the gun, i.e., the shooter, Arno Castillo. Lewis was also impeached in a BAC of .121 at least an hour or two after the shooting occurs but claimed he only had two beers during trial. Juan, our key witness and the person whose testimony is that issue in this court, he never provides any information and he doesn't come forward right away and say, Officer so-and-so, I saw the second person. This is what he looks like. He doesn't say anything until a photo array, and this goes to Your Honor's other point and the question you just asked me, a photo array is compiled by the Chicago Police Department and several days after the shooting occurs, the police go with this photo lineup to both Candido and Lewis, the two victims that were shot in this case. They bring the photographs and I would like to note on the record that Carlos Killian looks almost identical to my client. Wasn't Carlos in the photo array? Oh yes, he's number two. My client's number one. So they bring, when I say they, I mean the Chicago Police Department brings this photo array over to Candido and Lewis and says, identify someone. Candido and Lewis go, number one, he's the guy that we saw from 20 feet away. By the way, I would also supplement my argument about the identification at the stop sign being questionable, again, based on the slim factors, the Neal v. Biggers factors. We've got 10 or 15 kids around a stop sign. We have three people in a car. The car stops. There's a bunch of chaos. Arno Castillo is the one that the three identification witnesses say they focused on. He had a tattoo on his neck. They were able to describe him. The other guy that's allegedly 20 feet away that they identify in this photo array, maybe he had a gun. He's 20 feet away, couldn't describe his clothing, couldn't give any facial features, couldn't describe anything with specificity. But for some reason, they pick number one out of this photo array. My client then, based on that identification, gets arrested by the Chicago Police Department, gets brought in for a lineup. At that point, that's when the Chicago Police go and get Juan, Lewis, and Candido, contact them and say, come on down and view this lineup. During that 10 to 11-day period, Juan did nothing proactively on his own to contact the police and provide any information. And in fact, during the trial, he conceded, yeah, I didn't say anything to the cops that night. And I use cops because I believe that's the way he expressed it. He also was impeached because the one thing he did say to the police on the night of the offense was that, oh, well, the offenders came up in a small gold Toyota or Honda. They chased us and then ran away. Now, that's what he's saying on the night of the offense. He completely denies it at trial, which not only goes to his credibility,  who piorritively did nothing proactively on the night of that actual ones.  Now I'm going to go to one more question. This is a terminatory question. Can you wrap it up in about two minutes andanut you'll have some time to reply? Sure, Your Honour. In this case, and in wrapping up, the trial court not only incorrectly recalled the evidence, it mistakenly applied the evidence in order to convict someone who didn't commit a crime, who wasn't there, and that was proven later after trial. This is a very unconventional case, the way everything played out. Again, from pre-trial procedures to during trial, towards to after trial. The evidence in the record in black and white demonstrates how mistaken the judge was in his recollection of the facts. And any human being might be months after hearing the evidence. The trial court also, as demonstrated by a Supreme Court case last week, and as certainly demonstrated by the Molstad case, where five co-defendants came out after trial and the judge denied a motion for new trial, the trial court here should have granted Hermes Gabriel a new trial. All of those factors were met. He didn't grant the new trial, and that was error as well. Hermes Gabriel wasn't proven guilty beyond a reasonable doubt based on Lewis's very, very bad, weak and impeached identification testimony. And as far as accountability, there was not a scintilla of proof presented that that second man in the alley had the specific intent to facilitate the crime, that he had the ability to aid or abet, or that he did anything before during this crime to facilitate its commission. There wasn't any accountability proof. I asked the Court to reserve a few minutes for rebuttal if it would allow me, but I also asked the Court to reverse this conviction. My client was wrongfully convicted. And if the Court is unwilling to do that, then at the very least, fairness requires a new trial in this matter. Thank you. Thank you, Your Honor. Mr. Foss. Please. It pleases the Court. I'm Robert Foss on behalf of the people of Illinois. In the light most favorable to the people, the State proved that the defendant was guilty beyond a reasonable doubt. The State established that the defendant was one of the assailants who committed aggravated battery of the firearm against three victims on September 14, 2004. The evidence shows that this isn't two incidents. This is one incident that transpired over a 15-minute period. It started at the intersection where there was a verbal altercation where a group of individuals accosted the victims who were in their car at the stop sign. The co-defendant identified himself as a Latin King gang member. All three victims saw the defendant on the other side of the vehicle, on the passenger side, display a handgun. After they left that area, they went three blocks down the road to 6331 North Rockwell Street. They were in the back alleyway when the shooting occurred. All three victims had seen the defendant at the stop sign. At the scene, Juan Villalobos testified that he saw the defendant pointing a gun in the direction of the victims after co-defendant had fled by him and the sensor light came on. There's more than just... The defendant is accountable for everything that went on.  He had a verbal altercation with our victims, and then later on he's seen again at the scene. Three individuals placed him, not in his home as the alibi that they present is, but he's seen at a stop sign. And then later on he's seen again in the alleyway pointing a gun. The pointing of the gun, under banks, you can infer from his conduct that that's evidence that he had intent to commit a crime. He was serving as a backup to the shooter, although he did not fire a shot. He was there. He aided and abetted. He was more than just present. He was seen with a firearm earlier, and then he was also seen with a firearm later on. Everything happened and it was all related. It wasn't a separate sequence of events at all. It was all one incident that transpired. The court's not required to accept the alibi testimony just because it's presented by the defendant. It was biased. There were two sisters and a friend, and it doesn't override the fact that there was credible identification by all three victims. There was some impeachment, though, presented by the state and also against the state as a result of the one GPR and the lack of general notes as well, is that right, on the alibi. There were interviews of the defendant's family, and police then testified after they did as to what they said. Notes reflected that the police supported the police in one part of it and did not support the police. There were no notes as to the second alleged conversation, is that right? Yes. The state acknowledged that the detective did not record in a report. That's correct. But that testimony wasn't, the defender's testimony wasn't crux to the case. It was, crucially, the case was the identification testimony, which the court found to be positive and credible. But it does go back, frankly, to why would the capper go out and talk to the people and not write down what was said. If you're not going to write it down, why leave your desk? You know, when I just, what's the sense? That's correct, Your Honor. And in regards to the post-trial testimony, the testimony of the co-defendant cannot be factored in to the, to ruling whether or not there's reasonable doubt. It wasn't before the trier of fact, so it's not, it can't be considered on the reasonable doubt rule. It can be considered to grant the new trial, which is, I think, the thrust, certainly, of the post-trial testimony was we want a new trial. And it can certainly be considered for that. That's correct. I just wanted to address that up front, that it couldn't be considered for the reasonable doubt analysis and whether or not, because it wasn't before the trier of fact at the time. I don't know if you want to argue that, Mr. Foss, because I think that the defendant, the shooter, explained why his partner was with him, which was to provide him with coverage, to cover his back. And so I think that helps you. Go ahead. In regards to the post-trial motion, the trier of fact heard co-defendant testify about what he alleges happened. However, he was found not credible. It was proven on the stand that he was basically bought off by defendant's family. He was given money. He was given money. He didn't come forward with this information until a private investigator hired by defendant's family contacted him. And even when he testified in this hearing, he admitted that he's a liar. He admitted that he lied during the investigation to the state's attorney's office when he was interviewed. He even gets caught up in his own lie when he's questioned by the state in the hearing, when he's asked about the, you know, who was with him. He doesn't even say in his affidavit, that statement that he gives that Hermes Gabriel wasn't with him. He just said it was this Carlos Killian guy. But he gets caught up in his, when the state asks him specifically about what happened then, he said no, you know, asked about Hermes Gabriel, he said he was basically security for my back. And the state's attorney had to correct him and say, well, talking about Hermes Gabriel, I'm not Carlos Killian. And he got caught up in his, he couldn't keep his own story straight. Well, I wouldn't read it that way. But he's not, basically when the, when the court made his ruling, the court did more than just say, no, I'm not considering it. The trial judge stated that he reread the trial transcripts, and he heard, and he acknowledged that he heard the testimony, co-defendant. And he said that he was going to stand by his ruling at the trial. It can be inferred from that, that he made a credibility assessment, and from everything that he heard, and he stood by what he said, even if, I mean, the state acknowledged, we can see that, you can say it's newly discovered evidence at this post-trial hearing. Now, would you concede based on the mole stat that were the, the holding of which is that the defendant cannot call his co-defendant, therefore, this by its, just the legal nature of this post-trial evidence by the shooter constituted new evidence? The judge could choose to reject it, but it constituted new evidence, which was unavailable at the initial trial. So I concede on that notion. But however, the evidence wasn't of a conclusive character that would have changed the result of the trial. The judge heard all this testimony, and he also had heard, he was a trier of fact throughout, and he heard all the evidence presented at trial, and then again at this hearing. And he didn't find that it would change his determination that, he did not find that that would change the outcome of his ruling at the trial. So therefore, it's not, it's not, it's not, it wouldn't change, it wouldn't change the outcome, so his ruling is proper in that matter and disregarded. What effect does the fact that the judge had some issues with his recollection of the facts in some of the. Well, although he may have misspoken, I mean, it's clear that, it's clear from his ruling that he knew the facts, he just may have misspoke. I mean, there was. As to identification and saying, I mean, this isn't just a, oh, got the names wrong or something like that, isn't it to a key point in the case? Yes, but he, he may, he did mischaracterize, but still he, I mean, everything was brought forward again at the post-trial hearing, and he still, he stood by his ruling. You know, and he based, you know, it's, I mean, he based his ruling based on the, there was three identifications at the stop sign and the one at the shooting. I mean, he's only, he only got convicted on the aggravated matter of the firearm. He didn't, he may have mischaracterized, but he still came to the proper ruling. But he was wrong, right? When the trial court said, talking about the defendant, he was identified as being on the scene originally, which I'd suggest is the street corner, he's correct about that, with a gun, correct about that. And then he was identified in a gang way by one witness shooting the gun, he's wrong about that, right? Nobody, no witness said Mr. Gabriel fired a weapon. So the court continuing, identification by one of the brothers and by Candido Marino, he was picked out by two people in this case, as I recall. He's wrong about that, it was actually three initially, and then one of those three later. But he's wrong. But even still, he came to the proper termination, and on this post-trial hearing, this case is distinguishable from the Ortiz case that the defendant cites. In Ortiz, the witness wasn't impeached at all by the state, he wasn't discredited in any way. But in this case, the co-defendant has proven that he was paid and that he's a liar. And so the cases are distinguishable. So for that reason, the trial judge was correct in standing by his ruling. Based on the arguments made today in Ortiz, the state asks that this court affirm the conviction and sentence of the defendant. Thank you, Mr. Fox. Ms. Foster, Mr. Murphy, reply briefly. Thank you, Your Honor. I understand I only have a minute or two to reply. In response to the state's arguments, first of all, it cites the Banks case to support its accountability theory. That case is completely distinguishable from what happened here. The court in Banks found that the defendant was an active participant in the shooting. The facts in that case were that the police were in hot pursuit of the person that was allegedly accountable. They run after that gentleman. They see him discard a gun, and then they arrest him. If the argument is accountability, though, isn't that a lack of accountability? Again, I understand you're not conceding for your argument that he's present at the scene in either place. But the evidence is that the person with the shooter was at the scene, left the scene with the shooter, drove the three blocks, according to the shooter, searching for the people who had dissed them three blocks earlier for the purpose of shooting them. They arrive then three blocks later where these three guys are drinking, and he gets out and the shooter starts shooting at them, and the other fellow is also outside of the car. What's missing? I would disagree with the fact that that summary of the evidence is the way the evidence came in at trial, in the sense that, first of all, again, bad identification at the stop sign. There's no words of encouragement being shouted. They're flashing a gun while my partner is yelling at people, letting King love, showing here's my sign, the other guy having a gun like I got a gun. I don't know. I'm with these guys. That's how you say it. I'm with these guys. The second man who's at the stop sign is 20 feet away from this car, and the witnesses, and it was only Candido Marino who testifies in trial about the shirt being pulled up and maybe the gun coming out. Candido was not positive, and he admitted that. So is that evidence beyond reasonable doubt that the state's theory about the stop sign, the two people get in a car, they drive over to 6331 North Rockwell? Well, there are two people, right? There's no question, but there's two people. But the shooter has somebody with him, right? Carlos Killian and Arnold Castillo. But yes, Your Honor, you're right. There's two people, depending on who you listen to, and the two victims don't identify two people in the alley. So does that theory, which was partially what the state's theory was, does that hold muster of an accountability beyond a reasonable doubt conviction? No, it doesn't. And actually, I would cite two state sites to banks where the person was literally apprehended with a firearm and arrested. My client isn't even contacted by the police until weeks later. In the Williams case, which is, again, a recent First District opinion, that case addressed accountability in the context of a bench trial involving actually Judge Lynn. And Judge Lynn was reversed by this appellate district. It was an egg-kidnapping case based on accountability. The evidence in that case was insufficient because the witnesses were young. They were 10, 11 years old, 9 years old, and their testimony was found by the appellate court to be insufficient to support an accountability conviction. I would analogize that case and just say that the state's standing up here saying that there was evidence that Hermes Gabriel had motive and opportunity. Where is that evidence beyond a reasonable doubt? There was no confession. There was no physical evidence. There was nothing, not a scintilla of anything, that corroborated Juan's bad identification testimony. So, no, that burden wasn't sustained by the state. As far as the alibi is concerned, the state makes a conclusory comment in stating that these alibi witnesses, all three of them, were biased because of the relationship to my client. The alibi witnesses were the only people that immediately contacted the police in this case. The eyewitnesses didn't contact the police. It was the alibi witnesses who called the Chicago Police Department and said, hey, guess what, you've wrongfully arrested our brother. He didn't do anything, or our friend. As far as the post-trial issue is concerned, again, the state makes these conclusory statements here today in oral argument and in their briefings that Arno Castillo was bought off by the family, that he didn't come forward and admitted he was a liar. That's based on conjuncture, speculation. Well, he admitted getting $600 in his commissary account from Mr. Gabriel's family, right? But he certainly explained then that first of all... That wouldn't be enough to buy my testimony, right? That's not enough, right? Yes, those are the words used by the witness, that that's not enough to buy my testimony. But he also said, Arno Castillo, or I'm sorry, excuse me, Hermes Gabriel's family gave me that money because they knew I didn't have a family, and we were kind of in it together. We traveled through this path, I got to know his family, they gave me the $600. And actually, what's in the record as well is the sheets from the books at IDOC. You can see when that was. And it makes sense. The most important thing, despite the state's weak attempts to discredit his testimony, is that he gave up his only chance to ever get out of prison by testifying at that hearing. He gave up possibly his life. He was sentenced to 15 years. He knew at the time he testified, and he knew at the time that he wrote that affidavit, that he was giving up his only shot to get out. He gave up his Fifth Amendment right against self-incrimination. And that's a right that lasts through sentencing. The U.S. Supreme Court's been very clear, it's a right that goes through appeal. He was advised by his public defender, who I'm sure if he was an effective attorney said, look, I don't know if I would do this if I were you. Even after having the advice of a competent attorney, who again, most likely would have advised him not to testify, he nonetheless gave up his right, got on that stand, and told everybody what happened. And again, I would like to remind the court that when the state makes these conclusory statements, like he admitted to being a liar, and that he was clearly incredible, the trial court did not find that. The trial court, it didn't just say denied. The trial judge said, I looked at the transcripts, denied. It was one sentence. So that evidence is again, outside of our record here. Can you bring your remarks to a close? Yes, Your Honor, thank you. I would just say that the nonchalant attitude that the state's attorney's office has taken in its briefings towards the substance of the evidence that was presented during trial and after trial isn't what our criminal justice system is about. Justice was not served in this case. Justice is when there is even a scintilla of an indication that someone could be wrongfully convicted, and we don't have a trial court or an appellate court to make sure that someone doesn't remain wrongfully convicted. Hermes Gabriel, at the very, very least, should be granted a new trial. Based on the chronology of events and everything that occurred, it's very clear that he didn't get any fairness in any part of this proceeding. I argue, though, primarily, that his conviction should be reversed outright by this court because the state did not sustain its burden. Thank you.